Michael J. Pendleton,  :
               Appellant  :
                               :

                  v.  :

Randall B. Todd; Raymond A. Novak;  :   No. 202 C.D. 2016
Kate Barkman; and Mary Beth Perko  :   Submitted: June 10, 2016

OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                           FILED: September 14, 2016

      Michael J. Pendleton (Pendleton), pro se, appeals from the Allegheny County Common Pleas Court's (trial court) January 19, 2016 Memorandum and Order dismissing his "[c]ivil [r]ights [c]omplaint" (Complaint) as frivolous and dismissing his request to proceed *in forma pauperis* as moot. Pendleton raises two issues for this Court's review: (1) whether the trial court erred by denying his application to proceed *in forma pauperis*; and, (2) whether the trial court erred when it dismissed his Complaint as frivolous. After review, we affirm.

      Pendleton is an inmate at State Correctional Institution Somerset, serving a life sentence for second-degree murder, and a concurrent term of 10 to 20 years for criminal conspiracy. On November 3, 2015, Pendleton, pro se, filed his Complaint against four defendants: The Honorable Randall Todd (Todd), a sitting judge; Raymond A. Novak (Novak), the now-retired judge who presided over Pendleton's jury trial and sentencing; Kate Barkman (Barkman), the former Allegheny County Department of Court Records Director; and Mary Beth Perko (Perko), the court reporter who transcribed Pendleton's criminal trial (collectively, Defendants). In conjunction with his Complaint, Pendleton filed an application for leave to proceed *in forma pauperis*.

Pendleton's Complaint alleges, inter alia:

[]7. . . . . [Pendleton] at the time he was a juvenile was never lawfully arrested through valid warrant, as no valid warrant was ever issued or signed by a magistrate or judge, nor has [Pendleton] ever received a preliminary hearing. [Pendleton] has a [Post Conviction Relief Act[1] (]PCRA[)] Petition [c]urrently [p]ending in the [trial court] based on [n]ewly-[d]iscovered [f]acts.

[]8. . . . [Pendleton's] continued illegal and unlawful detention amounts to false imprisonment and assault and battery.

. . . .

[]10. On or between March 23, 1999 and March 25, 1999[,] while employed and/or associated with [the trial court] as a [c]ourt reporter/stenographer[,] Perko did impair and/or pervert the administration of law or other governmental function by physical interference or obstacle and breech [sic] her official duty, when [] Perko conspired with [] Novak to conceal and cover-up [sic] fraud during [Pendleton's] criminal trial where they agreed to not transcribe the notes of testimony and events of the trial proceedings on [M]arch 25, 1999.

[]11. [] Perko, deliberately failed to record and/or transcribe what took place and/or transpired during [Pendleton's] [j]ury trial on M[a]rch 25, 1999. [] Perko, knowing that her conduct was unlawful, has denied and impeded [Pendleton's] exercise and enjoyment of rights and privileges, statutory and rule based rights of access to the court. . . . [] Perko, certifies that [the] transcript[] end[s], and there is no record of a jury verdict, a polling of jury, or guilty plea colloquy. There is [sic] no March 25, 1999 transcripts in [Pendleton's] underlying criminal case.

. . . .

[]13. On or between March 23, 1999 and March 25, 1999, while employed as a [trial court j]udge, [] Novak did interfere with and commit official oppression, when he

_____
[1] 42 Pa.C.S. §§ 9541-9546.

conspired with [] Perko to deprive [Pendleton] of his rights under the Fourteenth Amendment to the Constitution of the United States and Article 1, §§ 1, 6, 9 and 26 of the Pennsylvania Constitution, where [] Novak and Perko agreed not to record and/or deliberately omitted from the record testimony during the March 25, 1999 trial proceedings, which occurred outside the presence of [Pendleton]. [] Novak and Perko failed to record the answer to juror's questions.

[]14. [] Novak has tampered with [Pendleton's] trial transcripts to conceal and cover-up the manifest injustice which occurred on March 25, 1999, where [] Novak conspired with [] Perko to conceal the trial proceedings which occurred on March 25, 1999, by failing to transcribe the notes of testimony in violation of clearly established federal law as announced by the United States Supreme Court. . . . The conspiracy entered and completed by [] Novak and Perko has denied [Pendleton] meaningful access to appellate review and amounts to official oppression and governmental interference[,] resulting in [Pendleton's] denial of access to the court. . . .

[]15. [] Todd's failure to provide [Pendleton] with a correct copy of trial transcripts from March 25, 1999 amounts to official oppression[], where [] Todd has obstructed [Pendleton's] access to the court's [sic] by refusing to find [Pendleton's] constitutional rights were violated where the trial transcripts are non-existent for March 25, 1999, when the Commonwealth alleges a guilty plea was entered, when no signed guilty plea exists, nor guilty plea colloquy appears on the face of the record. [] Todd in furtherance of [] Novak and Perko's original conspiracy has denied [Pendleton's] every request for [the M]arch 25, 1999 transcripts or equivalent picture of the events of March 25, 1999.

[]16. [] Todd knows and/or should know that no transcripts exist of the March 25, 1999 trial proceedings. As a result of this knowledge[, ] Todd has failed to discharge his oath of office to uphold the Constitution of the United States and has conspired with [] Novak and Perko, to conceal manifest injustice, which resulted in a juvenile defendant being sentenced to life without the possibility of parole for a criminal homicide he did not commit and was not legally

3

convicted of committing. As a result [] Todd has tampered with the official criminal records to conceal the miscarriage of justice.

[]17. [] Barkman, has continued to interefere [sic] with [Pendleton's] access to the court, by refusing to docket and/or accept [Pendleton's] request for his transcripts of March 25, 1999. [] Barkman conspiring with [] Novak, Perko and Todd has failed to file [Pendleton's] request for transcripts from March 25, 1999, knowing that such transcripts does [sic] not exist, which verification would support the vacating of [Pendleton's] judgment of conviction and sentence warranting a new criminal trial. [] Barkman has engaged in official oppression and denial of access to the court. [] Barkman, has illegally entered in the criminal docket of [Pendleton's] underlying criminal case, that he plead [sic] guilty on March 25, 1999, when no such guilty plea was ever entered, amounting to falsification of official records, to conceal and cover-up [] Novak and Perko's original conspiracy to deprive [Pendleton] of his constitutional rights secured by the Constitution of the United States and Pennsylvania. [Pendleton] has been denied his Due Process and Equal Protection rights, and has denied [Pendleton] a forum to be heard.

Complaint ¶¶ 7-8, 10-11, 13-17 (citations omitted).

On December 21, 2015 and January 13, 2016, Defendants filed preliminary objections to the Complaint. By January 19, 2016 Memorandum and Order the trial court dismissed the Complaint as frivolous and declared Pendleton's *in forma pauperis* application moot.[2] The trial court explained:

A review of the docket . . . reveals a clerical error in that it appears to indicate that [Pendleton] pleaded guilty on March 25, 1999. The docket has been corrected. Although the official jury trial transcript inexplicably does not include the announcement of the jury verdict, I have reviewed the official court papers in this case and take judicial notice of the accuracy of the above[-]stated portion of the

---

[2] The trial court's Memorandum and Order makes no mention of the Defendants' preliminary objections, nor is there any indication in the dockets that they were ruled on.

4

Memorandum of the Superior Court.[3] Moreover, [Pendleton] admits he was convicted of second-degree murder in at least one post-sentence motion filed on his behalf.

Trial Ct. Op. at 3. Pendleton appealed to this Court.[4]

Pendleton argues that the trial court erred by denying his request to proceed *in forma pauperis*[5] and dismissing his Complaint as frivolous. We disagree.

Initially, Pennsylvania Rule of Civil Procedure No. 240(j)(1) provides in pertinent part:

> If, simultaneous with the commencement of an action or proceeding or the taking of an appeal, a party has filed a petition for leave to proceed in forma pauperis, the court prior to acting upon the petition may dismiss the action, proceeding or appeal if the allegation of poverty is untrue or if it is satisfied that the action, proceeding or appeal is frivolous.

---

[3] The trial court quoted the following language from the Superior Court's memorandum opinion in *Commonwealth v. Pend[le]ton*, (Pa. Super., No. 370 WDA 2014, filed September 25, 2014), slip. op. at 2:

> On March 25, 1999, a jury found [Pendleton] guilty of second-degree murder, robbery, firearms not to be carried without a license, prohibited offensive weapon, and criminal conspiracy. The conviction stems from [Pendleton's] shooting of a jitney driver, Kenneth Wright, in the back of the neck with a sawed-off shotgun, during the commission of a robbery, when [Pendleton] was fourteen years old. On May 4, 1999, the trial court sentenced [Pendleton] to a term of life imprisonment without parole for the homicide conviction, and a concurrent term of not less than ten nor more than twenty years' incarceration on the criminal conspiracy conviction. This Court affirmed the judgment of sentence on April 14, 2000, and our Supreme Court denied allowance of appeal on August 14, 2000.

*Id.* (footnote omitted); *See* Trial Ct. Op. at 1.

[4] "Our scope of review is limited to determining whether constitutional rights have been violated, whether the trial court abused its discretion, or whether the trial court committed an error of law." *Lichtman v. Glazer,* 111 A.3d 1225, 1227 n.4 (Pa. Cmwlth. 2015).

[5] Notably, the trial court did not deny Pendleton's *in forma pauperis* application, but instead concluded that based upon its disposition of the matter, the application was moot.

> *Note:* A frivolous action or proceeding has been defined as one that 'lacks an arguable basis either in law or in fact.' *Neitzke v. Williams*, 490 U.S. 319, [326] . . . (1989).

Pa.R.C.P. No. 240(j)(1).

> Section 9542 of the PCRA provides:
>
> This subchapter provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. The action established in this subchapter **shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose** that exist when this subchapter takes effect, including habeas corpus and coram nobis. This subchapter is not intended to limit the availability of remedies in the trial court or on direct appeal from the judgment of sentence, to provide a means for raising issues waived in prior proceedings or to provide relief from collateral consequences of a criminal conviction. Except as specifically provided otherwise, all provisions of this subchapter shall apply to capital and noncapital cases.

42 Pa.C.S. § 9542 (emphasis added). Our Supreme Court has explained:

> [T]he General Assembly intended that claims that **could** be brought under the PCRA **must** be brought under that Act. No other statutory or common law remedy 'for the same purpose' is intended to be available; instead, such remedies are explicitly 'encompassed' within the PCRA.
>
> This Court has repeatedly and uniformly given effect to this plain language contained in the PCRA.
>
>> By its own language, and by judicial decisions interpreting such language, the PCRA provides the sole means for obtaining state collateral relief. Where, as here, a defendant's post-conviction claims are cognizable under the PCRA, the common law and statutory remedies now subsumed by the PCRA are not separately available to the defendant.

6

*Commonwealth v. Yarris*, . . . 731 A.2d 581, 586 ([Pa.] 1999) [(citations omitted)].

*Commonwealth v. Hall*, 771 A.2d 1232, 1235 (Pa. 2001).

Here, Pendleton filed a civil rights action seeking the following relief:

a) Decla[ra]tory judgment finding that no [M]arch 25, 1999 trial transcripts exist in [Pendleton's] underlying criminal case;

b) Decla[ra]tory judgment that no signed guilty plea colloquy or guilty plea transcript exists for [M]arch 25, 1999 in [Pendleton's] underlying criminal case;

c) Decla[ra]tory judgment finding that no [j]ury verdict exists in the certified record of [Pendleton's] underlying criminal case rendered on [M]arch 25, 1999;

d) Declaratory judgment finding [D]efendants['] actions both jointly and severally . . . violated [Pendleton's] . . . First, Sixth, Eighth, and Fourteenth Amendment rights . . . .

e) Preliminary and/or permanent injunction which: (i) [e]njoins [Defendants] from creating, altering, or tampering with the certified record in [Pendleton's] underlying criminal case; [and,] (ii) [e]njoins [] Todd from further deliberation over [Pendleton's] underlying and/or pending state habeas corpus petition filed in [Pendleton's] underlying criminal case.

f) any other relief . . . just and necessary to deter future violations.

Complaint at VI.

In *Keller v. Kinsley*, 609 A.2d 567 (Pa. Super. 1992), our Superior Court addressed circumstances similar to the instant action. There, a prisoner brought an action claiming he was unjustly convicted based upon false allegations and, therefore, sought money damages, a new jury trial and other relief. The prisoner also "filed a [p]etition to proceed *in forma pauperis*, in a civil proceeding, which was denied based upon the trial court's conclusion that the claims raised in [the prisoner's]

7

complaint were a direct collateral attack on [his] criminal conviction and thus could not be properly raised in a civil suit."[6] *Id.* at 567.

On appeal, the Superior Court reviewed the complaint. It concluded that "the major contention raised in [the prisoner's] complaint is that he was unjustly convicted[,]" and that "from the allegations contained in his complaint and from the type of relief he has requested, that [the prisoner] is attempting to collaterally attack his criminal conviction through means of a civil action." *Id.* at 568. The Court held that the PCRA "is the only means by which [the prisoner] could collaterally attack his conviction[,]" and therefore, the Court affirmed the trial court's dismissal of the prisoner's complaint. *Id.*

In *Guarrasi v. Scott*, 25 A.3d 394 (Pa. Cmwlth. 2011), a prisoner filed a petition for review in this Court's original jurisdiction "seeking declaratory relief against seven Bucks County judges, officials or employees . . . who [were] designated as open-records officers or appeals officers for [Right To Know Law[7]] purposes." *Id.* at 397. The prisoner

> [sought] an order that (a) declare[d] his common law and constitutional rights of access to the requested documents, and (b) require[d the d]efendants to forward these documents to him. [The prisoner] also [sought] a declaration that [the d]efendants violated his common law, statutory and constitutional rights by denying him access to these documents. [The prisoner] also [sought] additional declaratory relief against past and present . . . [c]ommon [p]leas judges.

*Id.*

This Court explained:

---

[6] As in the case *sub judice*, "the [trial] court's decision to deny [the prisoner's] request to proceed *in forma pauperis* was based on its belief that the claims set forth in [the] complaint were frivolous[.]" *Keller*, 609 A.2d at 567.

[7] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

> [A p]laintiff may not use a civil action for declaratory judgment . . . to collaterally attack the legality of his criminal proceedings . . . . *Keller*. The PCRA is the sole means 'by which persons convicted of crimes they did not commit and persons serving illegal sentences' may obtain collateral relief. 42 Pa.C.S. § 9542. *Keller*. Therefore, [a p]laintiff must raise all his common law constitutional claims against [the d]efendants in his PCRA petition.
>
> For this reason, to the extent [the prisoner's] civil action . . . alleges [the d]efendants violated his common law and constitutional rights in the criminal proceedings against him, the civil action fails to state a cognizable claim.

*Guarrasi*, 25 A.3d at 402 (citation and footnote omitted).

Based on a thorough review of Pendleton's Complaint and his brief, it is clear that his civil action is a collateral attack on the legality of his conviction, which Pennsylvania law makes clear may only be raised by a PCRA petition and not by a civil complaint. Thus, because Pendleton's civil action fails to state a cognizable claim, the trial court did not err in dismissing Pendleton's Complaint as frivolous and denying his request to proceed *in forma pauperis* as moot.[8]

For all of the above reasons, the trial court's order is affirmed.

---

[8] In light of our holding, we need not address the Defendants' judicial immunity and quasi-judicial immunity claims.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael J. Pendleton,          :
             Appellant     :
                       :
         v.           :
                       :
Randall B. Todd; Raymond A. Novak;  :   No. 202 C.D. 2016
Kate Barkman; and Mary Beth Perko  :

PER CURIAM

## O R D E R

AND NOW, this 14th day of September, 2016, the Allegheny County Common Pleas Court's January 19, 2016 Memorandum and Order is affirmed.